IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AHOSTING, INC., | : |
| Plaintiff, | : |
| | : CIVIL ACTION |
| v. | : |
| | : No. 11-7059 |
| LOGICWEB, INC., | : |
| Defendants. | : |

MEMORANDUM

**STENGEL, J.**                                                                      October 10, 2013

Plaintiff filed this civil action to recover damages for breach of contract and defamation. The defendant counterclaimed for breach of contract. Currently pending are the parties cross motions for summary judgment. Defendant moves for judgment against plaintiff's breach of contract and defamation claims. Defendant also moves for summary judgment in favor of its counterclaim. Plaintiff moves for summary judgment against defendant's counterclaim. For the reasons that follow, I will grant defendant's motion as to plaintiff's defamation claim, and I will deny the remainder of defendant's motion. I will deny plaintiff's motion in its entirety.

**I. BACKGROUND**

Ahosting, Inc., plaintiff, and Logicweb, Inc., defendant, are both website hosting companies. Doc. No. 21 Ex. 5 at 8; Doc. No. 21 Ex. 6 at 10.[1] On April 20, 2011, plaintiff entered into a written agreement with defendant. Plaintiff agreed to lease 145 C

---

[1] All citations to the docket refer to the page number assigned by ECF.

1

classes of internet protocol (IP) addresses from defendant for a period of five years. Doc. No. 21 Ex. 3 at 2-3. A C class of IP addresses is equivalent to 256 IP addresses; therefore, plaintiff leased a total of 37,120 IP addresses from defendant. Plaintiff agreed to pay defendant $4,454.40 per month for the term of the lease. Id. at 2. Plaintiff anticipated earning a net profit of $74,240 per month through its use of the IP addresses. Doc. 1 at ¶ 7.

The agreement between the parties includes an acceptable use policy (AUP) and terms of service (TOS). Defendant reserved the right to terminate the agreement without notice if plaintiff violated the AUP or TOS. Doc. No. 21 Ex. 3 at 9. Pursuant to the AUP, plaintiff was not permitted to use defendant's IP addresses to send unsolicited bulk email (SPAM) or to infringe a third party's copyright. Id at 11-12. Plaintiff was responsible for all uses of the leased IP addresses. Id. at 7, 12. In other words, defendant reserved the right to terminate the agreement for any use of its IP addresses which violated the terms of the AUP whether or not the violation was committed by plaintiff, plaintiff's subscribers or an unauthorized third party.

On June 5, 2011, defendant notified plaintiff that defendant was terminating the agreement. According to defendant, over 4,000 of the IP addresses which defendant leased to plaintiff were blacklisted for spamming. Doc. No. 21 Ex. 5 at 33-32, 86. Additionally, defendant received two complaints for copyright infringement for material published on the leased IP addresses. Id. Plaintiff denied the reports of spamming and one of the copyright complaints, but plaintiff did admit that one copyright complaint was associated with a leased IP addresses. Doc. No. 21 Ex. 5 at 46-47.

Upon terminating the agreement, defendant sent an email to Nexcess.net, LLC (Nexcess). Nexcess stores and maintains plaintiff's servers and webhosting equipment. Doc. No. 21 Ex. 6 at 12. Defendant's email to Nexcess, demanded Nexcess to remove the leased IP addresses. The email also states:

> There has been numerous bot-like activity and copyright complaints on these IPs that are owned by us, LogicWeb Inc…. Customer "Ahosing Inc" has wrongfully abused our AUP / TOS and broken a legal agreement…."

Plaintiff filed a complaint against defendant alleging breach of contract and defamation. Defendant answered the complaint, denied all the allegations, and counterclaimed for breach of contract. Both parties have filed motions for summary judgment. Defendant moves to dismiss plaintiff's claims for breach of contract and defamation. Defendant also moves for summary judgment in favor of its counterclaim. Plaintiff moves for summary judgment to dismiss defendant's counterclaim.

## II. STANDARD OF REVIEW

A motion for summary judgment may be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Summary judgment is proper when no "reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A party seeking summary judgment initially bears the burden of identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is therefore appropriate when the non-moving party fails to rebut the

moving party's argument by pointing to evidence that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "Evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255.

## III. DISCUSSION

### A. Breach of Contract claims

#### 1. Defendant's motion

Defendant has moved for summary judgment on plaintiff's breach of contract claim, and in favor of its own counterclaim that plaintiff breached the contract. Defendant contends there is no evidence that it breached the contract. In favor of its counterclaim, defendant argues it is undisputed that plaintiff breached the terms of the AUP. Since defendant has not met its burden of identifying portions of the record that demonstrate the absence of a genuine issue of material fact, I will deny defendant's motion as to plaintiff's breach of contract claim and defendant's counterclaim.

Under Pennsylvania law, the essential elements of a breach of contract claim are: 1) the existence of a contract, 2) a breach of a duty imposed by the contract and 3) resultant damages. J.F. Walker Co., Inc. v. Excalibur Oil Grp., Inc., 792 A.2d 1269, 1272 (Pa. Super. Ct. 2002). There is no disagreement that there was a valid contract between the parties. The dispute here is over who breached the contract. Analysis of the contract is required to determine what duties the agreement imposed.

"The interpretation of any contract is a question of law for the court." Pocono Summit Realty, LLC v. Ahmad Amer, LLC, 52 A.3d 261, 269 (Pa. Super. Ct. 2012). "When construing agreements involving clear and unambiguous terms, a trial court need only examine the writing itself to give effect to the parties' understanding." In re Estate of Hoffman, 54 A.3d 903, 907 (Pa. Super. Ct. 2012). I find nothing about this contract ambiguous. "[Defendant] reserve[d] the right to terminate [plaintiff's] service without notice," if activity on the IP addresses violated the AUP. Doc. No. 21 Ex. 3 at 9. The AUP clearly prohibits the use of defendant's IP addresses to SPAM or publish material which infringes a third party's copyright. Id. at 10 -12. The agreement also put plaintiff on notice that it was responsible for all activity on the leased IP addresses. Id. at 12 ("LogicWeb subscribers will be held responsible and accountable for any activity by third parties, using their account, that violates guidelines created with the Acceptable Use Policy.").

The contract gave defendant the remedy to terminate the agreement if any activity on the leased IP addresses violated the AUP. However, defendant was required to exercise this option in good faith. J.J. DeLuca Co., Inc. v. Toll Naval Associates, 56 A.3d 402, 412 (Pa. Super. Ct. 2012) ("Every contract imposes a duty of good faith and fair dealing on the parties in the performance and the enforcement of the contract."). Under Pennsylvania law, whether a party acted in good-faith is a question of fact for the jury. Huang v. BP Amoco Corp, 271 F.3d 560, 565 (3d Cir. 2001) (citing Jamison v. Concepts Plus, Inc., 552 A.2d 265, 270 (Pa. Super. Ct. 1988)). Thus, defendant was not permitted to terminate the contract on unfounded allegations of copyright infringement or

spamming. Based on this analysis, plaintiff had a duty to prevent any prohibited activity on the leased IP addresses, and defendant had a duty to exercise its rights to terminate the agreement in good faith.

Defendant wants summary judgment on plaintiff's claim for breach of contract because there is no support in the record for this claim. According to defendant, the only "duty" plaintiff alleged defendant breached was defendant's failure to provide plaintiff with notice prior to terminating the agreement. While I agree defendant had no duty to notify plaintiff prior to terminating the agreement, plaintiff also alleges that defendant terminated the agreement without justification. I take this to mean that defendant's termination of the contract breached defendant's duty of good faith and fair dealing. As discussed above, defendant did not breach its duty if plaintiff violated the AUP.

As to the counterclaim, defendant contends there is no dispute about plaintiff violating the AUP. Defendant's argument primarily rests on the deposition of Erkan Ozdogen, CEO of Ahosting, Inc. At the deposition, defendant's counsel presented Mr. Ozdogen with a copyright complaint associated with IP address 98.159.230.76, and Mr. Ozdogen acknowledged that it was an IP address used by plaintiff's customer. Doc. No. 21 Ex. 6 at 46:7 - 47:23. While Mr. Ozdogen's testimony appears to support that copyrighted material was published on a leased IP address, Mr. Ozdogen did not agree that an act of copyright infringement actually occurred. Rather, Mr. Ozdogen merely noted that the complaint was associated with a leased address. As defendant has

6

provided no other evidence regarding the alleged copyright infringement, I find there is a genuine issue that copyright infringement occurred on the leased IP addresses.[2]

Defendant also references the reports of SPAM sent from the leased addresses. According to plaintiff, the SPAM complaints were associated with IP block 98.159.42.0/24 which defendant did not lease to plaintiff. Doc. No. 21 Ex. 6 at 45. Further, plaintiff argues the IP addresses were blacklisted and the defendant failed to clean the addresses before leasing them to the plaintiff. Doc. No. 25 at 12. There is a genuine issue of material fact as to whether SPAM was sent from the leased addresses.

Defendant has not identified any portion of the record which demonstrates the absence of a genuine issue as to whether plaintiff breached the AUP. In the absence of uncontroverted evidence of copyright infringement or SPAM, defendant may still have been within his rights to terminate the contract provided defendant terminated the agreement in a good faith belief that prohibited activity occurred. Whether or not a party to a contract acted in good faith is a question of fact best resolved by a jury. Huang, 271 F.3d at 565. Therefore, I will deny defendant's motion for summary judgment as to the breach of contract claims.

### 2. Plaintiff's Motion

In its motion for summary judgment, plaintiff argues that defendant cannot show plaintiff breached a duty under the contract. Plaintiff also claims that defendant cannot recover damages. Plaintiff's first argument is immaterial, and its second is not supported

---

[2] Defendant included as an exhibit to its motion a letter from a copyright holder alleging an infringement of the copyright on a leased IP addresses. This email does not provide enough information to determine that the copyright was infringed.

7

by the facts on the record or the applicable law. Therefore, I will deny plaintiff's motion for summary judgment

According to plaintiff, defendant never determined whether plaintiff actually used the leased IP addresses. Plaintiff's motion suggests that it can only be liable for breach of contract if plaintiff's activity violated the AUP, but plaintiff misconstrues the agreement. The contract clearly made plaintiff responsible for all uses of the leased IP addresses. Specifically, the contract states:

> You are responsible for maintaining the confidentiality of your username and/or password, if applicable. You are responsible for all uses of your account, whether or not actually or expressly authorized by you.

Doc. No. 21 Ex. 3 at 7. It is immaterial whether plaintiff actually used the addresses because plaintiff was responsible for all activity on the addresses whether or not plaintiff authorized the use of the addresses. Plaintiff has not met its burden of showing an absence of a genuine issue of a *material* fact.

Next, plaintiff asserts that defendant's sole remedy under the contract was to terminate the agreement, but the terms of the contract do not support this interpretation. Under Pennsylvania law, parties may limit their remedies by contract, but the parties must expressly state the limitations in the terms of the contract.[3] Liss & Marion, P.C. v.

---

[3] Defendant cites to the UCC in support of its rebuttal that a limitation on remedies must be expressly stated in the contract. However, the UCC does not apply to leases. 13 Pa.C.S. §2101, *et. seq.;* Cucchi v. Rollins Protective Servs. Co., 546 A.2d 1131, 1139 (Pa. Super. Ct. 1988) *rev'd on other grounds*, 524 Pa. 514, 574 A.2d 565 (1990) (noting that the plain wording of the statute, does not apply to leases). While the Pennsylavnia Supreme Court has extended some provisions of the UCC to leases, Cucchi v. Rollins Protective Servs. Co., 574 A.2d 565, 570 (Pa. 1990), it has not yet extended the provision governing the limitation of remedies to leases. 13 Pa.C.S. §2719. Since at common law parties must expressly state a limitation on remedies in the terms of the contract, it is not necessary to analyze whether the Pennsylvania Supreme Court would extend 13 Pa.C.S. §2719 to leases.

Recordex Acquisition Corp., 983 A.2d 652, 661 (Pa. 2009). The agreement provides that defendant could terminate the contract if plaintiff violated the AUP, but nowhere does the contract state that termination was the defendant's exclusive remedy. Since the agreement does not expressly limit defendant's remedy to termination, defendant may pursue a counterclaim against plaintiff for breach of contract. Plaintiff's arguments are immaterial and not supported by law; therefore, I will deny plaintiff's motion for summary judgment.

### B. Defendant's motion for summary judgment on plaintiff's defamation claim.

Plaintiff's action for defamation is based on defendant's email to Nexcess demanding that Nexcess remove defendant's IP addresses from plaintiff's servers. In a claim for defamation, the defendant has the burden of proving that plaintiff was harmed by the defamatory publication.[4] 42 Pa.C.S. § 8343. Defendant argues that the court should grant summary judgment because the defendant cannot establish that it was damaged by the email. Since the plaintiff has not produced any evidence sufficient to establish the element of damages, I will grant summary judgment against plaintiffs defamation claim.

A defamatory email is libel, and plaintiff need not prove special damages. A plaintiff in a libel action, "need not prove special damages or harm in order to recover; he

---

[4] The elements for a defamation claim in Pennsylvania are established by statute. The plaintiff has the burden of proving: 1.) the defamatory character of the communication, 2.) its publication by the defendant, 3.) its application to the plaintiff, 4.) the understanding by the recipient of its defamatory meaning, 5.) the understanding by the recipient of it as intended to be applied to the plaintiff, 6.) special harm resulting to the plaintiff from its publication, 7.) abuse of a conditionally privileged occasion. As the parties only dispute whether defendant can show damages, I will not discuss the other elements of the plaintiff's defamation claim.

9

may recover for any injury done his reputation and for any other injury of which the libel is the legal cause." Agriss v. Roadway Exp., Inc., 483 A.2d 456, 474 (Pa. Super. Ct. 1984) (citing Restatement (Second) Torts § 621). Interestingly, the parties have briefed whether or not the email is slander per se. Since the email is written material and its defamatory character is not in dispute, the email is libel, and the plaintiff need only show that the email damaged plaintiff's reputation. Sobel v. Wingard, 531 A.2d 520, 522 (Pa. Super. Ct 1987) (citations omitted) (explaining the distinction between slander, which is spoken, and libel which is written).

Defendant again directs us to Mr. Ozdogen's deposition to show that plaintiff cannot establish the existence of any damages caused by the email. During the deposition, Mr. Ozdogen testified as follows:

> Q: In the complaint you also allege that Ahosting has been damaged by loss of revenues and reputation in the amount of approximately $100,000. Do you recall that?
>
> …
>
> A: Yes. Yes. That's item 42.
>
> Q: Yes. Can you describe how that number was calculated?
>
> A: Because this happened because LogicWeb not – terminated or canceled the IP addresses that it was giving to us.
> And I'm going to continue. **We lost our existing current customers when we told them that we weren't able to give them the IP service anymore.** And some of those customers who lost IP services started talking about our company in a bad way on the Internet on the forums, on the – on the forums that, you know, people follow. And they were bad kind of, you know, mentioning about our firm. Therefore, we lost our

> – some of our future sales and some of our existing customers.
>
> …
>
> Q: Okay. Were there any other reasons why you allege that there was damage to Ahosting's reputation?
>
> A: There was no other reason because our company has been serving in this area with a very clean and good name for years, and this was the only reason.

Doc. No. 21 Ex. 6 at 60:2 – 61:17 (emphasis added). Mr. Ozdogen's testimony demonstrates that defendant suffered damages through the loss of its customers. Such damages would be enough to support a claim of libel, provided the damages were caused by the libel. However, Mr. Ozdogen testified that plaintiff lost customers when plaintiff could no longer provide IP service. Plaintiff's inability to provide IP service was caused by defendant terminating the lease, not the email.

Defendant has met its initial burden to show an absence of a genuine issue as to plaintiff's defamation damages. Plaintiff has failed to rebut defendant's motion by pointing to evidence on the record which is sufficient to establish the element of damages. In its attempt to defeat defendant's motion, plaintiff correctly states that it need not prove special damages. However, plaintiff fails to recognize that it must at least show that the libel caused harm to its reputation. <u>Agriss</u>, 483 A.2d 456, 473-74. Clearly, plaintiff was damaged when defendant terminated the lease agreement, but plaintiff has adduced no evidence that the email caused the damage. Therefore, I will grant defendants motion for summary judgment against plaintiffs defamation claim.

## IV. CONCLUSION

In its motion for summary judgment, defendant has not met its burden of showing an absence of a genuine issue of material fact on the breach of contract claims. On the other hand, defendant has shown that plaintiff has produced no evidence to satisfy the damages element of its defamation claim. Therefore, I will grant defendant's motion as to the defamation claim. Defendant's motion is otherwise denied.

I will deny plaintiff's motion for summary judgment in its entirety, because plaintiff has not supported its motion with material facts or applicable law.

An appropriate order follows.